UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
DONALD GLASSMAN,

                          Appellant,                    **MEMORANDUM & ORDER**
                                                                               19-CV-5002 (MKB)
                          v.                                    19-CV-5003 (MKB)

ROBERT FELDMAN,

                          Appellee.
-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Appellant Donald Glassman, proceeding *pro se*,[1] filed these consolidated appeals on September 3, 2019, arising from a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), filed under Chapter 13 of the United States Bankruptcy Code. (Notice of Appeal, No. 19-CV-5002, Docket Entry No. 1.)[2] Appellee Robert Feldman, an attorney, filed for Chapter 13 bankruptcy on January 13, 2017 (the "Bankruptcy Proceeding"). (Bankruptcy Ct. Docket 1, Docket Entry No. 1; Notice of Bankruptcy R. Received ("R.") 1, Docket Entry Nos. 7 to 7-5.)[3] At the time Appellee filed for bankruptcy, Appellant was pursuing a state-court action against Appellee that arose from a former attorney-client relationship between the parties. (R. 98.) Appellant sought to dismiss the

---

    [1] As an attorney proceeding pro se, Appellant is not entitled to the solicitude normally due *pro se* litigants. *See Bank v. U.S. Dep't of Health & Human Servs.*, 708 F. App'x 43, 44 (2d Cir. 2018).

    [2] Appellant's two appeals are from the same order, rely on the same bankruptcy record, and are docketed at Nos. 19-CV-5002 and 19-CV-5003. Unless otherwise noted, the Court cites to No. 19-CV-5002, the lead docket number and the one under which Appellant filed his brief.

    [3] Citations to R. are to the consecutively paginated bankruptcy record. (R., Docket Entry No. 7.)

Bankruptcy Proceeding, arguing it was filed in bad faith and with the purpose of delaying the state-court action, (R. 95), and also moved for sanctions against Appellee, (R. 326–27).  The Bankruptcy Court dismissed the Bankruptcy Proceeding with prejudice and awarded Appellant a portion of the sanctions he sought.  (R. 996–1024.)

During the Bankruptcy Proceeding, Appellee's then-lawyer, Steven Hamburg, filed an affirmation describing Appellant's purported past litigation behavior in unflattering terms, disclosed records from a criminal case in which Appellee had represented Appellant — including emails between the parties during the attorney-client relationship — and also disclosed records from Appellant's bar complaint against Appellee.  (R. 638–39, 734–89, 863–64.)  Appellant moved in the Bankruptcy Court to seal the records on the grounds that they were scandalous and irrelevant to any legal argument, and also moved the court to sanction Appellee and his lawyer, Hamburg, under Rule 9011 of the Federal Rules of Bankruptcy Procedure, 28 U.S.C. § 1927, 11 U.S.C. § 105, and the court's inherent authority.  (R. 1156–58.)  By order dated August 15, 2019, the Bankruptcy Court sealed the documents but declined to impose any additional sanctions (the "Bankruptcy Order").  (R. 1168.)

Appellant appeals from that Bankruptcy Order, arguing that the Bankruptcy Court erred in denying the motion for sanctions.  (Appellant's Br. ("Br."), Docket Entry No. 9.)  Appellee has not responded, and the time to do so has passed.  Fed. R. Bankr. P. 8018(a)(2) ("The appellee must serve and file a brief within 30 days after service of the appellant's brief.").  For the reasons set forth below, the Court affirms the ruling of the Bankruptcy Court.

    **I.**    **Background**

Appellant is a former client of Appellee, an attorney.  (R. 97–98.)  In 2008, Appellant brought bar disciplinary proceedings against Appellee without success.  (R. 734.)  On February

17, 2009, Appellant sued Appellee in New York state court, raising legal malpractice and other claims related to their attorney-client relationship. (R. 95–100.) After repeated adjournments, trial was scheduled to commence on January 18, 2017. (R. 100.) On January 13, 2017, Appellee, represented by Hamburg, filed for Chapter 13 Bankruptcy. (R. 1.) Appellant argued, and the Bankruptcy Court agreed, (R. 1013–14), that Appellee's bankruptcy petition was filed in bad faith in order to delay the state-court proceedings, (R. 524).

    a.  **Bankruptcy proceedings**

Appellant, then represented by counsel, appeared as a creditor in the Bankruptcy Proceeding, (R. 3 (March 7, 2017 docket entry)), moved to dismiss the Bankruptcy Proceeding on the ground that it was filed "for the sole, improper purpose of securing an automatic stay of [his] civil actions . . . in New York State Supreme Court" (R. 95), and commenced an adversary proceeding against Appellee, (R. 245).

On May 10, 2018, Appellant moved for sanctions — the reimbursement of attorneys' fees and costs — based on Appellee's "willful and contumacious failure to comply with" discovery orders and his "material dishonesty" during discovery (the "May 2018 Motion"). (R. 334.) On May 30, 2018, the Bankruptcy Court held a bench trial on the motion. (R. 519–94 (transcript).) The Bankruptcy Court then directed Appellant's counsel to supply his billing records and directed Appellee to file "any responsive papers." (R. 517 (order).) Appellant filed a memorandum in further support of the motion. (R. 612–29.) Hamburg, on Appellee's behalf, filed an affirmation in opposition (the "Hamburg Affirmation"). (R. 632–42.)

The Hamburg Affirmation contained a section entitled "Facts Surrounding Glassman Matter," which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ d described Appellee's advocacy in preparing a successful New York Criminal Procedure Law ("C.P.L.")

3

§ 330 motion, which led to vacatur of the verdict and then to Appellant's acquittal after a bench trial. (R. 638–39.) Hamburg also stated that Appellant "had sued in federal court virtually everyone connected with his case" after the acquittal. Hamburg described how Appellant had sued Appellee for "scandalous remarks on an internet site" and had criticized Appellee in other forums. (R. 640.) The Hamburg Affirmation further stated that Appellant had made unsuccessful disciplinary complaints against Appellee ███████████████████████ ██████████████████████████████ and had sued Appellee in state court for an alleged conflict of interest, described as a "spurious allegation." (R. 641.) Attached to the Hamburg Affirmation were, in relevant part, emails between Appellant and Appellee (the "Attorney-Client Emails"), and copies of filings in Appellant's disciplinary proceedings against Appellee. (R. 734–89.) Those filings included documents detailing the criminal charges against Appellant.

On July 3, 2018, Hamburg filed a supplemental letter submitting an additional court decision adverse to Appellant. (R. 863–64 (the "July 2018 Letter").) Appellant had sued police officers and the City of New York in the Southern District of New York for false arrest and malicious prosecution (relating to the same incident in which Appellee had defended him), but the district court granted Appellant's motion for summary judgment, reasoning in principal part that there was probable cause for his arrest and prosecution.[4] (R. 864.) The July 3 Letter also alleged that Appellant had sued a court reporter. (R. 863.)

On July 31, 2018, Appellant moved to strike portions of the Hamburg Affirmation (the "July 2018 Motion") "because they (a) constitute[d] improper attempts to introduce new evidence

---

[4] *See Glassman v. City of N.Y.*, No. 10-CV-2468, 2013 WL 31952 (S.D.N.Y. Jan. 3, 2013), *aff'd*, 557 F. App'x 97 (2d Cir. 2014).

4

into the record . . ., (b) [we]re made without any personal knowledge, and [we]re (c) replete with impertinent, immaterial, unprofessional and scandalous allegations." (R. 865–73.) He also moved to strike the exhibits to the Hamburg Affirmation (the "Hamburg Affidavit Exhibits"), noting the privileged nature of the Attorney-Client Emails, and moved to strike the July 3 Letter. (R. 865.) In addition, Appellant moved to sanction Appellee and Hamburg for the filings pursuant to Rule 9011, arguing that the Attorney-Client Emails were privileged and should not have been disclosed, and also arguing that (contrary to the July 3 Letter) he had not sued a court reporter. (*Id.* at 871)

In response to Appellant's July 2018 Motion, Hamburg corrected the record to establish that Appellant had merely questioned the court reporter's testimony and argued that the other submissions were "relevant and proper under Federal Rule[] of Evidence [s]ection 404[](b) as evidence of a pattern and practice of [Appellant] making unfounded serial complaints against attorneys." (R. 877.) Hamburg was subsequently suspended from the practice of law for reasons unrelated to his representation of Appellee,[5] and Appellee retained new counsel. (R. 15.)

On December 19, 2018, Appellant moved to strike and seal the Hamburg Affidavit (the "December 2018 Motion"), the Hamburg Affidavit Exhibits, and the July 3 Letter, and for sanctions pursuant to Rule 9011, section 105, and the Bankruptcy Court's inherent powers, arguing that the filings were "replete with impertinent, immaterial, unprofessional and scandalous allegations," included privileged attorney-client communications, and had caused him to incur additional fees and costs. (R. 900–19.)

On January 15, 2019, the Bankruptcy Court held a hearing on the December 2018

---

[5] (R. 890); *see also In re Hamburg*, No. 18-MC-01710 (E.D.N.Y. June 22, 2018) (June 22, 2018 order suspending Hamburg, effective twenty-four days after its issuance, "upon such terms and conditions as set forth in the [corresponding state court] order").

5

Motion. (R. 960.) At the hearing, the court "grant[ed] the motion to strike and the motion to seal" the documents Appellant named in the motion, finding that the contents of those documents were "irrelevant and constitute ad hominem and potentially scandalous attacks on [Appellant], which have no pertinence in any way, shape, or form to any of the issues in this bankruptcy case." (R. 968, 972, 975.) The Bankruptcy Court deferred ruling on the motion for sanctions, noting that there was an open question as to whether Hamburg (who filed the papers) or Appellee was responsible. (R. 975.) Appellee conceded that the filings "do[]n't have anything to do with [his] bankruptcy," and suggested that "Hamburg obviously has other problems" that could have prompted him to make the disputed filings. (R. 977.) The court ordered Appellee and Hamburg to respond to the motion for sanctions. (R. 992–94.)

On February 26, 2019, the Bankruptcy Court granted the May 2018 Motion in part, dismissing Appellee's Chapter 13 case with prejudice and granting some of the sanctions Appellant had requested in the May 2018 Motion. (R. 996–1024.) Appellee, *pro se*, moved the court to reconsider the portion of that ruling granting sanctions, with the support of counsel's supplemental affidavit. (E.D.N.Y. Bankr. No. 17-1050, Docket Entry Nos. 61, 62.) In response, Appellant filed another motion for sanctions based on statements in Appellee's motion for reconsideration, arguing that Appellee's filings again contained "wholly impertinent, scandalous and malicious allegations" (the "February 2019 Motion"). (R. 1027–40, 1158.) On March 21, 2019, the Bankruptcy Court held another hearing — this time, on the February 2019 Motion — and concluded that additional sanctions were not warranted. (R. 1090.)

On August 13, 2019, the Bankruptcy Court denied Appellee's motion for reconsideration and also denied Appellant's motions for sanctions. (R. 1151–73 (Decision Den. Debtor's Mot. to Reconsider and Den. Pl.'s Reqs. For Additional Sanctions).) In denying the motions for

6

sanctions, the Bankruptcy Court addressed each of Appellant's four bases for the motion — Rule 9011, 28 U.S.C. § 1927, 11 U.S.C. § 105, and the court's inherent authority.  First, in addressing Rule 9011, the Bankruptcy Court found that a movant is required to provide notice to the party to be sanctioned by serving the proposed motion at least twenty-one days before filing with the court.  (R. 1162 (citing 9011(c)(1)(A), the "safe harbor provision").)  Because Appellant did not comply with the safe harbor provision, Appellant was not entitled to sanctions under Rule 9011.  (R. 1162–63.)  Second, the Bankruptcy Court noted that sanctions under section 1927 applied to "[a]ny attorney . . . who . . . multiplies the proceedings in any case unreasonably and vexatiously," (R. 1163), but found that because Appellee was represented by counsel when the Hamburg Affirmation, its attachments, and the July 3 Letter were filed, this section did not apply to Appellee.  (R. 1164.)  In addition, because Appellant's request for sanctions omitted mention of section 1927, the court found that Appellant could not seek sanctions against Hamburg under that statute. (R. 1163–64.)  Moreover, although Appellee had filed his motion for reconsideration *pro se*, placing him within the reach of section 1927, Appellant's second motion for sanctions did not mention this statute.  (*Id.*)

Third and fourth, the Bankruptcy Court noted that to impose sanctions under section 105 or its inherent authority, it was required to find bad faith — specifically, that the disputed filings were made with an improper purpose in mind — and the facts did not support the conclusion that there was an improper purpose for filing. (R. 1164–67.)  The court further found that to the extent Appellant complained of a violation of attorney-client privilege, that claim was properly brought in a bar disciplinary proceeding.  (R. 1167–68.)  Accordingly, the Bankruptcy Court exercised its discretion not to impose sanctions.  (R. 1169–70.)

Appellant timely appealed, opening two dockets that were consolidated on his motion.

7

(Order dated Apr. 27, 2020.) Appellant argues that Appellee "fil[ed] certain wholly impertinent, inflammatory, defamatory, confidential, and attorney-client-privilege-breaching documents . . . for the sole purpose of coercing [Appellant] to drop his challenge to Appellee's Chapter 13 bankruptcy petition, which was later dismissed on grounds of bad faith by the Bankruptcy Court." (Br. 7.)[6]

## II. Discussion

### a. Standard of review

District courts have appellate jurisdiction over "final judgments, orders, and decrees" entered in bankruptcy court. 28 U.S.C. § 158(a). A post-judgment ruling on sanctions is final. *Lothian Oil (USA), Inc. v. Sokol*, 526 F. App'x 105, 108 (2d Cir. 2013) (citing 28 U.S.C. § 158(a)). On appeal, a district court reviews the legal conclusions of a bankruptcy court *de novo* and its factual findings for clear error. *Wenegieme v. Macco*, No. 17-CV-1218, 2018 WL 334032, at *2 (E.D.N.Y. Jan. 9, 2018) (*citing Lubow Mach. Co. v. Bayshore Wire Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 103 (2d Cir. 2000)). "A finding is 'clearly erroneous' when, on consideration of the record as a whole, the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" *Bongiovanni v. Grubin*, No. 15-CV-2617, 2016 WL 4059349, at *3 (E.D.N.Y. July 28, 2016) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir. 2001)).

### b. Rule 9011 safe harbor provision

Appellant argues that the Bankruptcy Court committed clear error in finding that he had not complied with the safe harbor provision of Rule 9011 because he filed and served a letter

---

[6] In citing to the brief, the Court refers to the page numbers assigned by the Electronic Case Filing ("ECF") system.

8

motion for sanctions under Rule 9011 on July 31, 2018, the July 2018 Motion, and that filing concerned the same filings that formed the basis of his December 2018 Motion seeking sanctions. (Br. 23–26.)

Rule 9011 "[s]anctions may be — but need not be — imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous" — that is, when the bankruptcy court makes a finding of subjective bad faith. *Desiderio v. Parikh (In re Parikh)*, 508 B.R. 572, 584–85 (Bankr. E.D.N.Y. 2014) (quoting Fed. R. Bankr. P. 9011(b)). A party moving for Rule 9011 sanctions must comply with the "safe harbor" provision, Rule 9011(c)(1)(A), by serving the proposed motion for sanctions on the party to be sanctioned at least twenty-one days before filing with the court. Fed. R. Bankr. P. 9011(c)(1)(A). This rule is a "strict procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory*, 682 F.3d 170, 175 (2d Cir. 2012); *see also Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995). "[T]he failure of the party requesting sanctions to comply with the safe harbor provision constitutes grounds for denial of the motion." *Guarino v. Resciniti (In re Resciniti)*, No. 8-16-70669, 2019 WL 1451278, at *2 (Bankr. E.D.N.Y. Mar. 29, 2019); *see also In re Fierro*, 615 B.R. 403, 411 (Bankr. E.D.N.Y. 2020) ("Importantly, '[a]n informal warning in the form of a letter without service of a separate Rule 11 motion[7] is not sufficient to trigger the 21-day safe harbor period.'" (quoting *Star Mark Mgmt.*, 682 F.3d at 175)); *but see In re Obasi*, No. 10–10494, 2011 WL

---

[7] Rule 9011 "parallels Federal Rule of Civil Procedure 11, containing 'only such modifications as are appropriate in bankruptcy matters,'" and, as a result, Rule 9011 analyses are "informed by Rule 11 jurisprudence." *In re Cohoes Indus. Terminal*, 931 F.2d 222, 227 (2d Cir. 1991) (quoting *Cinema Serv. Corp. v. Edbee Corp.*, 774 F.2d 584, 585 (3d Cir.1985)). Thus, Rule 11 precedents are pertinent to the review of Rule 9011 sanctions decisions. *See Klein v. Wilson (In re Highgate Equities, Ltd.)*, 279 F.3d 148, 153–54 (2d Cir. 2002).

6336153, at *9 n.13 (Bankr. S.D.N.Y. Dec. 19, 2011) ("At least one court outside this circuit has found that Bankruptcy Rule 9011's safe harbor requirement can be satisfied by giving appropriate notice to a party other than by the service of a motion." (citing *Raymond Pro. Grp., Inc. v. William A. Pope Co. (In re Raymond Pro. Grp., Inc.)*, 420 B.R. 448, 463 (Bankr. N.D. Ill. 2009))); *In re Raymond Pro. Grp.,* 420 B.R. at 463 ("The Rule 9011 letter was sufficient in this case to give [the respondent] the notice and opportunity to withdraw as is required by the safe harbor provision. The letter contained a detailed recitation of the same violations set forth in the [d]ebtors['] motion for sanctions and expressly informed [the respondent] of the [d]ebtors' intent to seek Rule 9011 sanctions . . . .").

The denial of Rule 9011 sanctions is reviewed for abuse of discretion. *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 91 (2d Cir. 2010) ("A bankruptcy court's award of sanctions will not be set aside by [the Second Circuit] in the absence of an abuse of discretion."); *Klein v. Wilson (In re Highgate Equities, Ltd.)*, 279 F.3d 148, 151 (2d Cir. 2002) ("We review the Bankruptcy Court's imposition of sanctions for abuse of discretion."). A bankruptcy court "necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *In re Highgate Equities, Ltd.*, 279 F.3d at 152.

Appellant accurately argues that in his July 31, 2018 letter, he moved for sanctions in addition to moving to strike and seal portions of the record, (R. 865–73), and also accurately notes that the district court did not acknowledge the July 31 letter in analyzing Appellant's compliance with the safe harbor provision, (R. 1162–63). However, assuming without deciding that the July 31 letter was a sufficiently detailed statement that Appellant was moving for sanctions, the record suggests that the July 31 letter did not comply with the safe harbor provision: it appears to have been served on Appellee and simultaneously filed, without

providing Appellee the requisite twenty-one days' notice before filing it on the docket.  Fed. R. Bankr. P. 9011(c)(1)(A).  Accordingly, Appellant's July 31 letter did not provide the required "opportunity for an attorney to withdraw a filing that offends the rule."  *In re Taub*, 439 B.R. 276, 282 (Bankr. E.D.N.Y. 2010).  To the extent Appellant's argument is that the motion for sanctions he filed in July began the twenty-one-day notice period in advance of his December 2018 Motion seeking sanctions, he cites no authority for the proposition that he can satisfy the safe harbor requirement by filing multiple motions for sanctions provided that the motions are filed more than twenty-one days apart.

In addition, the July 31 letter, which also requested that the challenged filings be struck from the record and sealed, does not comply with the requirement that "[a] motion for sanctions under this rule . . . be made separately from other motions or requests."  Fed. R. Bankr. P. 9011(c)(1)(A).  Accordingly, Appellant did not comply with the safe harbor provision and the district court did not err by denying sanctions under this authority.

c. **Section 105 and inherent power**

Appellant argues that the Bankruptcy Court abused its discretion by (1) not considering whether Appellee should be sanctioned under section 105 for the challenged filings, because Appellee, not Hamburg, was responsible for those filings, (2) finding that Appellee and Hamburg did not make the challenged filings in bad faith, even though the only purpose for those filings (which included a confidential email between attorney and client and a sealed ▮▮▮▮▮▮ ▮▮▮▮▮▮▮) was an improper purpose, and (3) declining to hold an evidentiary hearing before finding that the vast majority of the challenged filings were largely in the public record. (Br. 26–42.)

Section 105 empowers a bankruptcy court to carry out the provisions of the bankruptcy

code. A bankruptcy court also has "inherent power . . . to sanction 'abusive litigation practices.'" *Law v. Siegel*, 571 U.S. 415, 420–21 (2014) (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375–76 (2007)). However, the general provisions of section 105 do not empower the bankruptcy court to violate more specific provisions, *id.* at 421, and the section "does not operate on a stand-alone basis" as a separate source of authority, *New England Dairies, Inc. v. Dairy Mart Convenience Stores (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003).

### i. The court considered Appellee's liability

Contrary to Appellant's claim, the Bankruptcy Court did not absolve Appellee of potential liability under this section. Although the Bankruptcy Court specifically considered whether the challenged filings reflect "bad faith on the part of Hamburg, who filed the documents," without simultaneously discussing Appellee's state of mind, the court did not absolve Appellee of responsibility. (R. 1165.) Instead, it considered the potential liability of both client and lawyer. (R. 1166 ("To impose sanctions against [Appellee] or Hamburg the [c]ourt must additionally find that they were filed for an improper purpose.").) In contrast, when the Bankruptcy Court concluded that Appellee could not be sanctioned under section 1927, which provides for sanctions against lawyers, it stated so clearly. (R. 1163. ("Because Hamburg represented [Appellee] at the time Hamburg's Post-Trial Filings were filed, sanctions pursuant to 28 U.S.C § 1927 are not available against [Appellee].") In addition, in denying Appellee's motion for reconsideration, the Bankruptcy Court "reject[ed] [Appellee's] attempts to shift blame to Hamburg." (R. 1160.)

### ii. The court did not err in declining to make an improper purpose finding

Appellant argues that the Bankruptcy Court abused its discretion by holding that there

was not sufficient evidence of improper purpose to impose a sanction, when the only evident purpose for making the disputed filings — including the sealed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the Attorney-Client Emails — was improper. (Br. 28–30.) As to the emails specifically, Appellant contends that the Bankruptcy Court abused its discretion in finding that there was no evidence to support of the conclusion that the disclosure of the emails was in bad faith. He argues that while a bar disciplinary proceeding is one permissible means to address this erroneous disclosure, it is not the only such means.

"Sanctions may be — but need not be — imposed when court filings are used for an "improper purpose," or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012). The imposition of section 105 sanctions is reviewed for abuse of discretion. *Livecchi v. Gordon*, 513 B.R. 209, 214 (W.D.N.Y. 2014).

The Bankruptcy Court recognized that the challenged filings did not serve a legitimate purpose and that it could have imposed monetary sanctions, but concluded that striking and sealing the challenged filings was an adequate remedy and no additional sanctions were necessary. (R. 1166–67.) During the March 21, 2019 hearing, the court stated that "using sanctions as a back-door way to recover is not an appropriate way to proceed," and concluded that granting additional monetary sanctions was unwarranted. (R. 1121–22.) Accordingly, the Bankruptcy Court did not abuse its discretion when it concluded that sanctions for this conduct were unwarranted.

As to Appellee's disclosure of the Attorney-Client Emails, Appellant is correct that attorneys may be sanctioned in federal court for breaches of professional ethics. *See United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (noting that "[w]here lawyers are involved

13

in scurrilous allegations, professional sanctions may be available," as are monetary sanctions under Rule 11). However, where the challenged "actions are taken on behalf of a client, the district court must make an explicit finding of bad faith." *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000). Hamburg made these filings on his client's behalf, and the Bankruptcy Court declined to find that Appellant acted in bad faith. *Lubit v. Chase (In re Chase)*, 372 B.R. 142, 155 (Bankr. S.D.N.Y. 2007) (holding the bankruptcy court "has broad discretion" in imposing appropriately proportionate sanctions). In addition, Hamburg asserted a purpose (though a weak one) for filing those emails — explaining Appellant's history of filing complaints against attorneys — that was at least not concededly improper. (R. 877.)

### iii. The court did not err in declining to hold an evidentiary hearing and finding much of the disputed information was public

Appellant argues that the Bankruptcy Court (1) erred in making its section 105 finding without an evidentiary hearing, and (2) erred when it determined that the disputed filings were already in the public record because not all the information in them was public. (Br. 30–36.)

"Bankruptcy courts have the discretion to decide an issue without holding an evidentiary hearing, and a district court can reverse such a decision only if it amounts to an abuse of discretion." *Gordon v. Tese-Milner (In re Gordon)*, 577 B.R. 38, 49 (S.D.N.Y. 2017) (citing *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 119 n.5 (2d Cir. 2003), *abrogated on other grounds by Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156 (2d Cir. 2010)). A hearing is not required where "the record provide[s] ample evidence on which the [bankruptcy] court could make . . . a decision." *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1313 (2d Cir. 1997) (holding that the bankruptcy court did not err in deciding, without holding a hearing, whether a party was acting in bad faith).

The core of the inquiry was whether documents were in the public record. No hearing

14

was required as the Bankruptcy Court had sufficient evidence to make a decision. Due process requires that "the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *60 East 80th Street Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc.)*, 218 F.3d 109, 117 (2d Cir. 2000). "The purpose of particularized notice is to put counsel 'on notice as to the particular factors that he must address if he is to avoid sanctions.'" *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (quoting *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir.1990)). Because Appellant was seeking to impose sanctions on another rather than himself facing sanctions, due process considerations were not implicated. Further, Appellant does not point to any instance in which he failed to receive notice of some relief sought by Appellee or was prejudiced by any lack of notice. *See Bertram v. HSBC Mortg. Servs., Inc. (In re Bertram)*, 746 F. App'x 943, 948 (11th Cir. 2018) (holding that bankruptcy court did not abuse its discretion in declining to sanction Appellee for improper service of a motion to dismiss, given that Appellant received actual notice).

Moreover, the facts at issue relate to Appellant's prior criminal trial, which was a matter of public record. *Presley v. Georgia*, 558 U.S. 209, 212 (2010) (citing *Press-Enter. Co. v. Superior Ct. of Cal., Riverside Cnty.*, 464 U.S. 501 (1984)) (explaining that the public has a right to information about criminal trial under the First Amendment, in addition to the defendant's Sixth Amendment right to a public trial). Further, the Bankruptcy Court exercised its discretion to limit any harm by sealing the offending filings, thus addressing Appellant's concern that not every fact in the challenged filings was previously public, and his additional concern that the disclosure of the nonpublic information by Appellee and Hamburg harmed him.

In sum, Appellant has not shown that the Bankruptcy Court abused its discretion in striking and sealing the disputed documents and denying his motions for additional sanctions.

### III. Conclusion

For the foregoing reasons, the Court denies Appellant's appeal and affirms the ruling of the Bankruptcy Court denying Appellant's motions for sanctions. The Clerk of Court is respectfully directed to enter judgment and close this case.

Dated: September 30, 2020
       Brooklyn, New York

                SO ORDERED:

                _____s/ MKB_____
                MARGO K. BRODIE
                United States District Judge